UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| LAURA ZYLSTRA KAISER, | 1:15-CV-01030-CBK |
| Plaintiff, | |
| vs. | ORDER AND OPINION |
| BRYAN GORTMAKER, IN HIS OFFICIAL CAPACITY AS SOUTH DAKOTA DIRECTOR OF THE DIVISION OF CRIMINAL INVESTIGATION; AND MARK BLACK, | |
| Defendants. | |

Plaintiff, Laura Kaiser, filed an amended complaint with the Court on December 17, 2015, which alleges reprisal and sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, reprisal and sexual discrimination in violation of The South Dakota Human Relations Act, and tortious interference. Defendant, Mark Black, has made a motion to dismiss Kaiser's claim of tortious interference because it does not qualify for supplemental jurisdiction under 28 U.S.C. § 1367. The Court is fully advised on the matter.

## FACTUAL BACKGROUND

On August 13, 2003, Kaiser was hired as a Special Agent and was assigned to the Drug Task Force in Aberdeen, South Dakota. The Drug Task Force is supervised and managed by the South Dakota Division of Criminal Investigation ("DCI"). Kaiser was responsible for preparing and executing search warrants, drug investigations, interrogating suspects, interviewing witnesses, and testifying in court. For eight years, Kaiser received positive performance reviews and was promoted to Special Agent III in January 2011. In her 2011 mid-year evaluation, Kaiser was praised for her exceptional work product, ability to work amicably with others, relentless

work, and above-average case activity. In July 2011, Kaiser was appointed to serve as the acting supervisor for the Northeast DCI agents while her supervisor was on vacation.

In August 2011, Brown County Deputy Ross Erickson was assigned to the Drug Task Force in Aberdeen, South Dakota. Kaiser alleges that Erickson immediately established a custom of making sexually explicit comments to her. Plaintiff alleges she wanted to make a harassment complaint but feared she would be adversely affected because she had a negative experience when she made a harassment complaint in 2005.

On October 17, 2011, Kaiser asked fellow coworker, Jessica Page, for advice. Page advised Kaiser to not file a complaint because it would only cause problems. Later that day, Kaiser informed Mark Black about Erickson's conduct. Black offered to speak with Erickson, but Kaiser declined.

The following day, Kaiser approached Erickson about the sexually inappropriate comments and questions. Erickson allegedly apologized and said he would not make such comments in the future. A few days later, Erickson informed Kaiser that Black had told the entire office about the issue. Kaiser apologized and said it was not her intent to have the office know about the incident. Later that day, Kaiser approached Black and asked why he shared her conversation with the rest of the coworkers. Black attempted to shift the blame on Kaiser, and began ignoring her at work.

That afternoon, Kaiser alleges that Black secretly assembled a meeting with Erickson, Deputy Damian Bahr, and DCI Agent Dave Lunzman in a park. Plaintiff alleges that Black conspired with Erickson, Bahr, and Lunzman to formulate a set of talking points in an effort to have her removed from the department or be fired. Kaiser claims the group agreed they would

2

all tell supervisor, Jason Even, that Kaiser was not to be trusted, was unpleasant to work with, and had mental health issues.

On October 21, 2011, Even interviewed Black, Erickson, Bahr, and Lunzman regarding Kaiser's complaint. Plaintiff alleges that Black, Erickson, Bahr, and Lunzman all followed their plan to disparage her. Afterward, Even met with Kaiser and accused her of fabricating her allegations and threatened the issue could result in her termination. Kaiser denied such allegations and told Even that Erickson had acknowledged and apologized for his behavior. Even was still skeptical of Kaiser and informed her that he was not satisfied with her work product and performance.

On November 4, 2011, Kaiser was put on a thirty-day work improvement plan ("WIP") because she failed to maintain satisfactory relationships with her coworkers and supervisors, was a disruptive influence in the office, produced unsatisfactory work products, and failed to provide leadership. Kaiser was given nine tasks to complete the WIP. One of her tasks was to rebuild positive relationships with coworkers, supervisors, and managers. When Kaiser attempted to rebuild her relationship with Black, he responded, "We are done. Don't ever approach me again."

On December 8, 2011, Assistant Director Dan Satterlee informed Kaiser she met the WIP's requirements with one exception: she had failed to rebuild positive relationships with her coworkers, supervisors, and managers. Kaiser was demoted to Special Agent II and was reassigned to the Medicaid Fraud Control Unit in Pierre, South Dakota, effective January 3, 2012.

Kaiser filed a grievance regarding her demotion, transfer, and treatment on December 12, 2011. On December 27, 2011, Kaiser reported sexual harassment and retaliation to then Brown

3

County State's Attorney, Kim Dorsett. The next day, Kaiser filed a formal grievance with the Director of the South Dakota Division of Criminal Investigation, Bryan Gortmaker. Kaiser also contacted South Dakota Attorney General Marty Jackley on December 28, 2011, to alert him to the facts and request that he stay the order of transfer.

Kaiser began her employment in Pierre, South Dakota, on January 3, 2012. Kaiser's grievance was denied on January 9, 2012. In response, Kaiser contacted the Equal Employment Opportunity Commission ("EEOC") in January 2012 to file a "charge of discrimination." Kaiser believes DCI began providing negative references about her to potential employers in retaliation. Plaintiff officially filed a grievance with Attorney General Jackley which was denied on February 23, 2012.

On April 16, 2012, Kaiser was informed she would not be allowed to live in the Pierre dormitory after September 1, 2012. In addition, Kaiser would not be receiving her per diem, compensation for travel time, and an ability to use a state vehicle to commute beginning on June 1, 2012. On May 8, 2012, Kaiser alleges she was constructively discharged. She e-mailed DCI that she had no choice but to resign and that her last day would be May 18, 2012. Kaiser received a letter accepting her offer of resignation and suspending her from pay until her resignation date.

Plaintiff alleges DCI has since prevented her from obtaining numerous positions of employment, including with the Department of Social Services, Department of Corrections, Department of Labor and Relations, and private employers, by providing negative references and misrepresentations about her employment, demotion, discharge, and performance.

4

Defendant Black has filed a motion (Doc. 50), pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1367 to dismiss Kaiser's claim of tortious interference because the Court should not exercise supplemental jurisdiction over the claim.

## STANDARD OF REVIEW

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." Montgomery v. Compass Airlines, LLC, 98 F.Supp.3d 1012, 1017 (D. Minn. 2015) (*quoting* Damon v. Groteboer, 937 F.Supp.2d 1048, 1063 (D. Minn. 2013)). "In deciding a motion under Rule 12(b)(1) the Court must first distinguish between a 'facial attack' and a 'factual attack.'" Id. (*quoting* Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (*quoting* Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993)). "In other words, in a facial challenge, the court determines whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the plaintiff." Id. (*citing* Biscanin v. Merrill Lynch & Co., 407 F.3d 905, 907 (8th Cir. 2005)). In a factual challenge, the Court may look beyond the complaint's jurisdictional allegations and receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. Titus, 4 F.3d at 593. The Court has not received affidavits, evidence, or deposition testimony in this case. Therefore, the Court will analyze this motion as a facial challenge to subject matter jurisdiction and will look to the face of the complaint and draw all reasonable inferences in favor of the plaintiff.

5

## ANALYSIS

The issue is whether the Court should exercise supplemental jurisdiction over Kaiser's claim of tortious interference against Black. Defendant Black asserts: (1) Kaiser's claim against him is not part of the same case or controversy as her federal claims against defendant Gortmaker; and (2) even if the claim is part of the same case or controversy, the Court should find there are other compelling reasons to decline jurisdiction, pursuant to 28 U.S.C. § 1367(c)(4). The plaintiff asserts: (1) her claim of tortious interference against Black is intimately intertwined with her discrimination and retaliation claims against DCI, and (2) there is no compelling reason to deny subject matter jurisdiction.

### 1. Kaiser's Tortious Interference Claim Qualifies for Supplemental Jurisdiction

A federal district court will exercise supplemental jurisdiction over a state law cause of action if the claim is part of the same case or controversy. 28 U.S.C. § 1367(a) explains:

> ... the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties.

"The federal claim must have substance sufficient to confer subject matter jurisdiction on the Court." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (*citing* Levering & Garrigues Co. v. Morrin, 289 U.S. 103 (1933)). "The state and federal claims must derive from a common nucleus of operative fact." Id. "But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." Id.

6

Because the Court has original jurisdiction over the plaintiff's Title VII claims, it must determine whether the tortious interference claim is so related to the federal claims that it derives from a common nucleus of operative fact. The plaintiff alleges that Black illegally caused her to be reprimanded and placed on a work improvement plan. Specifically, Kaiser alleges that Black secretly arranged a meeting in a park where the group of coworkers conspired to falsely disparage Kaiser by telling Even she could not be trusted, showed poor work performance, and had mental health problems. In this case, the relevant facts to the discrimination and retaliation claims are interwoven with the tortious interference claim. The plaintiff alleges that Black conspired against her for confronting Erickson about his behavior. Black's decision to disparage Kaiser was allegedly the impetus to her disparate treatment, demotion, transfer, and retaliation. Moreover, Black's decision to disparage Kaiser, if found to be true, is materially relevant to the third element of tortious interference, which states: "(3) An intentional and unjustified act of interference on the part of the interferer." Landstrom v. Shaver, 561 N.W.2d 1, 16 (S.D. 1997). Therefore, the tortious interference claim is so related to the Title VII claims that it derives from a common nucleus of operative fact.

## 2. There Are No Exceptional Circumstances or Compelling Reasons to Decline Supplemental Jurisdiction

Alternatively, Black asserts the Court should decline to exercise jurisdiction because it would best serve the principles of judicial economy. 28 U.S.C. § 1367(c) explains: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

7

The Court finds that none of the enumerated circumstances apply to this case. The claim of tortious interference is not particularly novel or complex. All concerns offered by defendant Black can be resolved by the Court's jury instructions, which will adequately inform the jury. The tortious interference claim will not substantially predominate over the federal claims because much of the same evidence used to support the plaintiff's tortious interference claim will also be helpful in understanding what initiated Kaiser's alleged disparate treatment at DCI. Defendant Black has failed to offer any exceptional circumstances that would compel the Court to decline to assert supplemental jurisdiction. Therefore, the Court finds it is appropriate to exercise supplemental jurisdiction over the plaintiff's claim of tortious interference.

**ORDER**

Now, therefore,

IT IS ORDERED:

1. Defendant Black's motion (Doc. 50) to dismiss for lack of subject matter jurisdiction is denied.

DATED this 14th day of April, 2017.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge